UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MATTHEW P.,[1]

                                   Plaintiff,              Case # 20-cv-1047-FPG

v.                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.

## INTRODUCTION

On February 28, 2017, Plaintiff Matthew P. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Tr.[2] 15. The Social Security Administration (the "SSA") denied his claim and Plaintiff appeared at a hearing before Administrative Law Judge JuanCarlos Hunt on April 11, 2019. Tr. 36. At the hearing, Plaintiff and vocational expert testified. On June 20, 2019, the ALJ issued an unfavorable decision. Tr. 12. The Appeals Council denied request for review, making the ALJ's decision the final decision of the SSA. Tr. 1. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 15, 17. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 10.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

# LEGAL STANDARD

## I.     District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## II.     Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

**DISCUSSION**

## I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 11, 2016, the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: late effects of injury to nervous system with neurocognitive impairment, anxiety, affective disorder, epilepsy, and visual disturbance. *Id*.

At step three, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Tr. 18. The ALJ determined that Plaintiff maintained the RFC to perform sedentary work. Tr. 20. However, the ALJ found that Plaintiff had non-exertional and exertional limitations including that Plaintiff can frequently balance, crouch, kneel, stoop, and climb ramps and stairs, can occasionally use left upper and lower extremities, but cannot have exposure to hazards, unprotected heights, machines with moving mechanical parts, and driving employer vehicles. *Id*. Plaintiff can understand, remember, and carry out simple instructions. Tr. 21. Plaintiff can frequently interact with coworkers and the public, including making simple work-related decisions. *Id*. Plaintiff can bear few changes in routine work setting, and he will be off task five percent of the workday. *Id*.

At steps four and five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform including, for example, dispatcher and administrative clerk. Tr. 28. As such, the ALJ found that Plaintiff was not disabled.

## II. Analysis

Plaintiff takes issue with the ALJ's decision on the basis that: (1) the ALJ's determination that Plaintiff would be off-task five percent of the workday is not supported by substantial

evidence; (2) the ALJ failed to recontact medical sources to fully develop the record; (3) the ALJ failed to consider employment evaluations; (4) the ALJ failed to address Plaintiff's alleged limitation in interacting with supervisors in the RFC; and (5) the ALJ failed to consider medication side effects in the RFC determination. *See* ECF 15-1 at 1-2. Because this Court agrees that remand is required under Plaintiff's first argument, it does not address Plaintiff's other arguments.

"Specific RFC assessments, like percentage of time off-task, must be based on evidence in the record, not on an 'ALJ's own surmise.'" *Wouters v. Comm'r of Soc. Sec.*, No. 19-cv-610-FPG, 2020 WL 2213896, at *2 (W.D.N.Y. May 7, 2020) (quoting *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (remanding where the ALJ "translated" medical evidence suggesting that the claimant would be off task "for ten percent of the workday" into a determination that the claimant would be off task "six minutes out of every hour" because "[t]here [was] no evidence in the record to the effect that [the claimant] would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday.")).

In making the RFC determination, the ALJ weighed a plethora of opinion evidence from the record and concluded that Plaintiff would only be off task for five percent of the workday. Tr. 21. However, this conclusion was not rooted in any of the medical evidence that the ALJ weighed. While the ALJ pointed to records indicating that Plaintiff had normal attention and normal memory, the ALJ does not tie the precise percentage of time off-task to any medical evidence. *See June S. v. Comm'r of Soc. Sec.*, No. 19-cv-1514-FPG, 2020 WL 7137041, at *3 (W.D.N.Y. Dec. 7, 2020) (finding the ALJ's 10% off-task limitation unsupported by the record where the finding was not rooted in any medical evidence nor did the ALJ attempt to tie any evidence to the specific conclusion); *see also Milliken v. Berryhill*, No. 1:16-CV-00297 EAW, 2017 WL 3208635, at *17

(W.D.N.Y. July 28, 2017) (case remanded where the ALJ determined that plaintiff would need half hour breaks over the course of an eight hour work day to complete tasks but failed to point to anything in the record to support the determination that such a duration would permit plaintiff to work). "Without some explanation from [the ALJ] as to the tether between [his] RFC and the . . . medical opinions or statements from plaintiff, the RFC appears to be based upon [his] lay analysis of plaintiff's limitations, which is not permitted and requires remand." *Jordan v. Berryhill*, No. 1:17-CV-00509 (JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018).

In response to Plaintiff's assertion that the off-task time is not supported by the evidence in the record, the Commissioner argues that no medical assessment regarding Plaintiff's off-task designation is needed. *See* ECF No. 18 at 6. The Court disagrees. The Commissioner cites *Johnson v. Colvin*, 669 F. App'x 44, 46-47 (2d Cir. 2016) (summary order), a non-precedential decision, in which the Second Circuit affirmed the district court when it was clear from the ALJ's decision that he had evaluated all of the medical records to quantify the limitation. ECF No. 18 at 8. There, the ALJ determined that plaintiff could perform work "slightly slower than average pace, i.e. no more than 10% slower than average." *Id*. at 47. In support, the ALJ in *Johnson* relied on various medical records including an opinion from a consultative examiner that plaintiff had minimal to no limit in the ability to understand directions, perform tasks, and maintain attention and concentration. *Id*. The same consultative examiner opined that plaintiff's physical problems may interfere with his ability to maintain a regular schedule. *Id*. The Second Circuit determined that the "no more than 10%" finding reflected the record evidence and was supported by substantial evidence. *Id*.

This case is distinguishable from *Johnson*. In *Johnson*, the ALJ assigned a range for the plaintiff's off-task limitation based on the records that acknowledged that if the plaintiff did have

such a limitation, it would be minimal. 669 Fed. App'x. 44, 47 ("The fact that the ALJ assigned a particular percent range (0-10%) to illustrate Johnson's limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence.") Here, however, the off-task limitation appears not to be based on substantial evidence, but contrived to enable the ALJ to find that Plaintiff is not disabled. Other than noting various medical records where Plaintiff has differences in attention and concentration levels ranging from normal to moderate limitations, neither the ALJ nor the Commissioner can point to anything in the record that suggests how much time Plaintiff would be off-task in a work setting due to his mental limitations, sleep disorder, or tremors. Tr. 97, 454, 480. Indeed, the ALJ asked the vocational expert if Plaintiff could hold a job with being off-task ten percent of the workday. Tr. 75. The vocational expert responded that employers would tolerate being off task for only five percent of the workday. *Id*. Without evidence to support this particular off-task limitation, the vocational expert's answer leads this Court to believe the ALJ manufactured the five percent off-task limitation to avoid a finding of disability. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion, and accurately reflect the limitations and capabilities of the claimant involved[.]") (quotation marks and citations omitted).

In support of the ALJ's conclusions, the Commissioner points to generalizations derived from treating source, Kenneth Halliwell, M.D.'s opinion regarding Plaintiff's mental health, while ignoring Dr. Halliwell's specific findings. Tr. 27. For example, Dr. Halliwell found that Plaintiff was alert and oriented, with intact attention and concentration, improvement in daytime fatigue, and lack of complaints of fatigue since August 2018. *Id*. at 27, 480, 637, 687. However, Dr. Halliwell also opined that Plaintiff would be off-task 25 percent of a workday because Plaintiff's

symptoms would keep him from being able to maintain attention and concentration.  Tr. 788.

Although the ALJ gave some weight to Dr. Halliwell's opinion, he explicitly rejected the off-task limitation, ultimately stating that such a finding was inconsistent with the record as a whole.  The ALJ cherry-picked or "selectively parsed" Dr. Halliwell's opinion when coming to an arbitrary designation for Plaintiff's off-task limitation.  *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015) (noting that an ALJ may not "cherry-pick[ ] evidence from the record").  This "raises the specter that the ALJ either cherry-picked the evidence to justify a pre-ordained conclusion, or interpreted the medical evidence based on [his] own lay judgment—both of which constitute error." *McGirr v. Comm'r of Soc. Sec.*, No. 19-CV-1004, 2020 WL 3467416, at *2 (W.D.N.Y. June 25, 2020).  The ALJ reasoned that Dr. Halliwell's opinion received some weight because the 25 percent off-task limitation was given using Plaintiff's "own subjective reports."  Tr. 27.  Since mental impairments—like off-task limitations—are "highly complex and individualized," the ALJ should have not given Dr. Halliwell's opinion less weight because of Plaintiff's subjective reporting.  *Nasci v. Colvin*, No. 6:15-CV-0947 (GTS), 2017 WL 902135, at *9 (N.D.N.Y. Mar. 7, 2017) ("[R]emand is necessary for the ALJ to properly assess the opinions of plaintiff's mental abilities and limitations.")

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 15, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 17, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 8, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court